FILED
**Dec 03, 2021**
**01:06 PM(CT)**
**TENNESSEE**
**WORKERS' COMPENSATION**
**APPEALS BOARD**



## TENNESSEE BUREAU OF WORKERS' COMPENSATION
## WORKERS' COMPENSATION APPEALS BOARD

| | |
|---|---|
| James McGauvran | )    Docket No.    2020-06-0558 |
| | ) |
| v. | )    State File No.   32368-2019 |
| | ) |
| ATOS Syntel, Inc., et al. | ) |
| | ) |
| | ) |
| Appeal from the Court of Workers' | ) |
| Compensation Claims | ) |
| Kenneth M. Switzer, Chief Judge | ) |

---

### Affirmed and Remanded

---

This is the second interlocutory appeal in this case in which the employee sustained serious injuries when a severe coughing episode precipitated by inhaling vapor from an electronic cigarette resulted in his falling from a wall on which he had been sitting in a designated smoking area near his workplace. In the first appeal, we vacated the trial court's expedited hearing order because the court did not address the employee's claim for temporary disability or medical benefits. Upon remand, the parties jointly submitted the employee's medical records and medical bills and "designated" issues for the trial court's second expedited hearing, including whether the employee is entitled to medical benefits for the initial treatment he received and whether he is entitled to temporary disability benefits. In its second expedited hearing order, which was a decision on the record, the trial court determined the employee is likely to prevail at trial in establishing he suffered an injury arising primarily out of and in the course and scope of employment and awarded the employee certain medical and temporary disability benefits. The employer has appealed. Discerning no error, we affirm the trial court's order and remand the case.

Judge David F. Hensley delivered the opinion of the Appeals Board in which Judge Pele I. Godkin joined. Presiding Judge Timothy W. Conner filed a separate opinion concurring in part and dissenting in part.

L. Blair Cannon, Atlanta, Georgia, for the employer-appellant, ATOS Syntel, Inc.

Jim Higgins, Nashville, Tennessee, for the employee-appellee, James McGauvran

**Factual and Procedural Background**

We have set out below a portion of the factual and procedural background from our opinion following the first appeal in this case.

On April 23, 2019, [James McGauvran ("Employee")] was working for ATOS Syntel, Inc. ("Employer"), as "functional lead of global voice and data networks." His office workplace was located on the fifth floor of a commercial office building in which Employer leased space. Employee was salaried and did not have a set office schedule. He would sometimes go to the office at 6:00 o'clock in the morning, but other times he would perform work remotely and go to his office later in the morning. He did not have scheduled breaks and took breaks "essentially when [he] could." He described himself as a long-term smoker, and, because smoking was prohibited inside the building where he worked, he would go outside the building to smoke in a designated smoking area located on the third floor of the parking garage that was part of the same building in which his fifth floor workspace was located. Employer's manager worked at the same location and was also a smoker.

When asked how often he would go outside to take a smoke break in April 2019, Employee said,

I couldn't put a number on it because like I said, you know, I would go outside for more than just a smoke. Where we would smoke, we – we commonly referred to it as the "third-floor meeting room." And sometimes my manager would ask me to come meet him out there and we'd have a quick meeting, and while we were there, we were smoking. So my primary reason for being there wasn't necessarily smoking.

. . . I wasn't always going outside for smoking. Sometimes I'd go out there for a meeting and sometimes it was for smoking. Sometimes the primary reason was smoking, sometimes the primary reason was a meeting.

Employee said the designated smoking area was referred to as the "third-floor meeting room" because "a lot of times we would have private meetings out there away from the client." Describing the area of the third floor where he would smoke, he indicated there were no tables, no "formal" seating area, no chairs, and no vending machines. Employee's Rule 72 declaration stated that Employer "provided no other designated smoking or break area," and that the wall on which he was sitting immediately before his

2

fall "was low enough (42") and wide enough (20") to be a natural place to sit [and] [i]n fact, it was the only [place to sit] as there [were] no chairs provided by [Employer] despite the regular use of this area for breaks."  Further, Employee's declaration stated that "[e]mployees, including [his] manager who was a smoker, routinely sat on the wall while using this area for a smoking break or for meetings."

Employee described the April 23, 2019 events that resulted in his fall and injuries as follows:

I went to the third-floor meeting room.  I – at the edge of the parking garage is a wall, goes up about three or four feet. The wall is three or four feet high and probably 24 to 36 inches wide, and it's – it's made of brick.  And I sat on the wall, was reviewing my emails, calendar, et cetera.  And I was trying to quit smoking, and I had picked up – I don't know what . . . I took a hit on a vape.

. . . .

I was reviewing emails and my calendar on my phone, and I used a vape and inhaled and wound up coughing to the point where I passed out.  When I passed out, I went backwards over the wall and wound up breaking my neck and my left big toe.

Employee said "[i]t was the first time [he] ever used that vape or – or any vape. And when [he] inhaled [the first time] is when [he] just started coughing to the point where [he] passed out."  He said he was sitting on the wall "multitasking" and "was using the vape while reviewing emails and calendar."  He said he "coughed so much and [he] was expelling air and, as a result, wasn't breathing, so [he] passed out and then fell."

The next thing Employee remembered was "coming to and screaming in agony."  No one was present when he inhaled on the e-cigarette, and no one was present when he regained consciousness.  He was able to get up "with great difficulty," and he called his manager and told him he "was hurt really bad" and needed help and where he was located.  His manager called an ambulance, and Employee was taken to a local hospital where he was admitted and underwent cervical fusion from C4 to C7 two days later. Employee testified that prior to the April 2019 incident he was diagnosed with diabetes and hypertension.  He testified his diabetes was controlled by diet and that he was able to stop taking medication for his diabetes.  He testified he had also been diagnosed with hypertension and had previously

3

taken medication for hypertension. He did not address whether he was supposed to be taking medication for hypertension at the time of his accident, but testified that, at the time of his deposition in January 2021, he was not supposed to be taking the medication.

Employee filed a petition for benefits on April 17, 2020, seeking temporary disability benefits, medical benefits, and attorney's fees. Following unsuccessful mediation, Employee filed a request for an expedited hearing and asked the court to issue a decision on the record instead of convening an evidentiary hearing. He submitted a Rule 72 declaration in support of his request in which he addressed the April 2019 incident, his injuries, and Employer's denial of his claim. In a November 2020 status conference order, the trial court noted that Employee filed a request for expedited hearing seeking a decision on the record. The order identified the issues as "compensability," [Employee's] entitlement to medical and temporary disability benefits, the compensation rate, and attorneys' fees for a wrongful denial." Further, the order noted that Employee's attorney "clarified that he only seeks a decision on the record on compensability at this time." The court held the "on-the-record" hearing request "in abeyance" and allowed the parties additional time for discovery, resetting the status hearing to February 2021.

In a February 2021 status hearing order, the court noted that Employee had been deposed and written discovery was complete, adding that "[c]ounsel agreed that the central issue in the case is compensability," and that "[t]he issues are legal not factual." The order stated the court "explained that it will decide [compensability] using the expedited hearing standard of 'likely to prevail at a hearing on the merits.'" The trial court subsequently issued a "Docketing Notice and Order," stating the court "finds it needs no additional information to determine whether [Employee] is likely to prevail at a hearing on the merits regarding the claim's compensability" and would "decide the issue on a review of the written materials without an evidentiary hearing." The order identified seven documents the court would consider and allowed "[e]ither party [to] file additional documentary evidence within seven business days." Employer submitted a "Response to Employee's Petition for Benefit Determination," and Employee submitted a "Compensation Hearing Pre-Trial Statement." No additional documentary evidence was submitted by the parties.

*McGauvran v. ATOS Syntel, Inc.*, Docket No. 2020-06-0558, 2021 TN Wrk. Comp. App. Bd. LEXIS 25, at *2-8 (Tenn. Workers' Comp. App. Bd. July 21, 2021) (footnote omitted).

4

After reviewing the evidence, the trial court concluded that Employee was likely to prevail at trial in establishing he suffered a compensable injury but did not address Employee's entitlement to temporary disability or medical benefits. We vacated the trial court's order and remanded the case, concluding "[t]he trial court decided the compensability issue but applied the lesser evidentiary standard applicable to resolving disputes concerning the provision of temporary disability and medical benefits" although "[n]either temporary disability nor medical benefits were at issue in the expedited hearing."

As noted in our earlier opinion, the facts of this case were presented in Employee's deposition transcript and in two declarations of Employee prepared in accordance with Rule 72 of the Tennessee Rules of Civil Procedure. Several photographs of the area where Employee's accidental injury occurred were also included in the record as exhibits to one of Employee's Rule 72 declarations. In addition, following our remand of the case, the trial court ordered the parties to designate "the issues for an expedited hearing" and to "specify the medical and temporary disability benefits at issue and file any additional proof" to be considered.

The parties jointly filed Employee's medical records and medical bills, agreeing the records and bills "are true, accurate and admissible in accordance with [applicable regulations] and the Tennessee Rules of Evidence." The parties subsequently jointly submitted a designation of the issues to be addressed by the trial court that included whether Employee would likely prevail at a hearing on the merits in establishing that he is entitled to (1) medical benefits for the initial treatment he received as a result of the work accident, and (2) an award of temporary disability benefits in the amount of $3,211.69 for the initial time period Employee was out of work and either not paid or had to use paid time off.

Following the second expedited hearing, which was also a decision on the record without in-person testimony, the trial court determined Employee was likely to prevail at a hearing on the merits in establishing he suffered an injury arising primarily out of and in the course and scope of his employment, which the court stated "was not idiopathic in nature." The court did not award the medical bills the parties stipulated to be admissible, concluding there was "no proof that the bills were reasonable, necessary, or causally-related to the work accident." However, the court ordered Employer to authorize any additional medical treatment made reasonably necessary by the work accident with Employee's treating physician, Dr. Chine Logan, and it further ordered Employer to pay temporary disability benefits totaling $3,211.69 in accordance with the parties' stipulations. Employer has appealed.

**Standard of Review**

The standard we apply in reviewing a trial court's decision presumes that the court's factual findings are correct unless the preponderance of the evidence is otherwise. *See* Tenn. Code Ann. § 50-6-239(c)(7) (2021). When the trial judge has had the opportunity

5

to observe a witness's demeanor and to hear in-court testimony, we give considerable deference to factual findings made by the trial court. *Madden v. Holland Grp. of Tenn., Inc.*, 277 S.W.3d 896, 898 (Tenn. 2009). However, "[n]o similar deference need be afforded the trial court's findings based upon documentary evidence." *Goodman v. Schwarz Paper Co.*, No. W2016-02594-SC-R3-WC, 2018 Tenn. LEXIS 8, at *6 (Tenn. Workers' Comp. Panel Jan. 18, 2018). Similarly, the interpretation and application of statutes and regulations are questions of law that are reviewed *de novo* with no presumption of correctness afforded the trial court's conclusions. *See Mansell v. Bridgestone Firestone N. Am. Tire, LLC*, 417 S.W.3d 393, 399 (Tenn. 2013). We are also mindful of our obligation to construe the workers' compensation statutes "fairly, impartially, and in accordance with basic principles of statutory construction" and in a way that does not favor either the employee or the employer. Tenn. Code Ann. § 50-6-116 (2021).

## Analysis

Employer raises a single issue on appeal, contending the trial court erred in determining Employee is likely to prevail at a hearing on the merits in proving that his fall from the wall while vaping is a compensable injury. Employer contends that Employee's injuries are not compensable "as they did not occur during the course and scope of his employment and did not arise out of his employment." Employee also raises an issue on appeal, contending the trial court erred in failing to order Employer to pay the medical bills the parties jointly submitted to the court prior to its decision on the record.

### *Whether the Trial Court Erred in Awarding Benefits*

Initially, we note that the issue raised by Employer does not require us to determine whether Employee's injury is compensable. Rather, we review the record to determine whether the preponderance of the evidence supports the trial court's determination that Employee would likely prevail at a hearing on the merits. *See* Tenn. Code Ann. § 50-6-239(d)(1). In doing so, as noted above, we presume the trial court's factual findings are correct unless the preponderance of the evidence is otherwise. *See* Tenn. Code Ann. § 50-6-239(c)(7).

Although an employee generally bears the burden of proving every element of the claim by a preponderance of the evidence, *see* Tennessee Code Annotated section 50-6-239(c)(6), a different standard of proof applies in expedited hearings, and an employee need not prove every element of his or her claim by a preponderance of the evidence to be awarded benefits in such hearings, *see* Tennessee Code Annotated section 50-6-239(d)(1). "Instead, as reflected in the plain language of subsection 239(d)(1), the judge may issue an interlocutory order upon determining that the employee would likely prevail at a hearing on the merits." *McCord v. Advantage Human Resourcing*, No. 2014-06-0063, 2015 TN Wrk. Comp. App. Bd. LEXIS 6, at *8 (Tenn. Workers' Comp. App. Bd. Mar. 27, 2015). As noted in *McCord*, "since an expedited hearing is interlocutory in nature, either party

6

may present additional evidence at the final compensation hearing and ask the trial court to reverse or modify the interlocutory order." *Id.* at \*10.

Employer contends that Employee's injuries did not occur during the course and scope of his employment and did not arise out of his employment. The Tennessee Supreme Court long ago stated that the requirements that an injury "arise out of" and occur "in the course of" the employment are not synonymous.

> An injury occurs "in the course of" employment if it takes place while the employee was performing a duty he or she was employed to perform. Thus, the course of employment requirement focuses on the time, place, and circumstances of the injury."

> In contrast, "arising out of" employment refers to causation. An injury arises out of employment when there is apparent to the rational mind, upon consideration of all the circumstances, a causal connection between the conditions under which the work is required to be performed and the resulting injury.

*Clark v. Nashville Mach. Elevator Co.*, 129 S.W.3d 42, 47 (Tenn. 2004) (internal citations omitted).

Employer contends the accident in question did not meet "either prong of this test." It contends Employee's injury did not occur "in the course of employment" because Employee was not performing his job duties or otherwise providing a benefit to Employer at the time of the alleged injury, adding that Employee was "on a smoke break and was outside in a parking structure using a vaping device." Further, Employer asserts "[t]here is no indication doing such was in any way providing a benefit to Employer." Employer acknowledges Employee's testimony that he had "checked some emails and his calendar on his phone while outside," adding that Employee "was clear that at the time of his fall and injuries he was vaping."

The trial court determined that Employee's work as a manager provided a sufficient connection to the accident. Indeed, Employee testified that he fell while vaping in a designed smoking area that he referred to as the "third floor meeting room," where he had previously discussed work with his manager while smoking. Addressing Employer's argument that Employee was not performing his job duties or otherwise providing a benefit to Employer because Employee was vaping when he became injured, the trial court said Employer's argument "ignores [Employee's] unrefuted testimony that he was working while on his break, reviewing his emails and calendar on his phone." We agree that, at this stage of the proceedings, Employee's unrefuted testimony provided a sufficient connection for the trial court to conclude that Employee's injury occurred in the course of his employment.

7

Addressing the requirement that an injury "arise out of" the employment, Employer cites cases holding that "[t]he mere presence of the employee at the place of injury because of the employment is not sufficient, as the injury must result from a danger or hazard peculiar to the work or be caused by a risk inherent in the nature of the work." Further, Employer notes that the phrase "'arising out of' requires that a causal connection exist between the employment conditions and the resulting injury." Without specifically addressing a causal connection between the conditions of the employment and Employee's injuries, the trial court stated that "Tennessee has long recognized the 'personal comfort doctrine,' which generally brings injuries suffered by employees while on authorized breaks, including smoke breaks, within the umbrella of compensable injuries." Employer notes in its brief that there are several cases "where injuries have been held to be in the course and scope of employment while the employee was on a break or going for a smoke" but insists there is a distinction in this case in that "[i]t was the actual act of inhaling that started the chain of events that led to Employee's injuries," whereas cases relying on the "personal comfort doctrine" relate to the smoking being incidental to the event. According to Employer, "[t]he smoking in the case at bar was not incidental to the event – it was the start of the event."

Employer presents this argument in the context of the "course and scope" requirement for a compensable injury. However, the "personal comfort doctrine" may involve a mixed question including both the "arising out of" requirement as well as the "course of" requirement. *See* 2 Larson's Workers' Compensation Law § 21.01. As stated by Larson, "[e]mployees who, within the time and space limits of their employment, engage in acts which minister to personal comfort do not thereby leave the course of employment, unless the extent of the departure is so great that an intent to abandon the job temporarily may be inferred, or unless, in some jurisdictions, the method chosen is so unusual and unreasonable that the conduct cannot be considered an incident of the employment. *Id.* at 21.syn. Discussing incidental acts such as eating, drinking, *smoking*, and other acts in the context of workers whose hours and premises of work are somewhat definite, as in this case, Larson says that, in addition to what activities rightly belong in the personal comfort group of activities, a second "mixed question" concerns whether the manner of seeking personal comfort may disqualify the activity if the method chosen is unreasonably dangerous or unconventional. *Id.* at § 21.01 (emphasis added). Addressing smoking, Larson says that "practically all cases hold that smoking does not constitute a departure from the employment." *Id.* at § 21.04.

Although not described as the "personal comfort doctrine" or "personal comfort activities," the Tennessee Supreme Court recognized, only two years after the enactment of Tennessee's original workers' compensation legislation, that there are personal activities in which a worker may engage that are incidental to the work and which may pose dangers that result in injuries that are accidents that *arise out of* the employment. In *Tennessee Chemical Co. v. Smith*, 238 S.W. 97 (Tenn. 1921), the Court quoted with approval the

following from a California case in which a worker was injured when he accidently ignited a bandage on his hand while lighting a cigarette:

> Such acts as are necessary to the life, comfort, and convenience of the servant while at work, though strictly personal to himself, and not acts of service, are incidental to the service, and *injury sustained in the performance thereof is deemed to have arisen out of the employment*. A man must breathe and occasionally drink water while at work. In these and other conceivable instances he ministers unto himself, but in a remote sense these acts contribute to the furtherance of his work. . . . That such acts will be done in the course of employment is necessarily contemplated, and they are inevitable incidents. Such dangers as attend them, therefore, are incident dangers. At the same time injuries occasioned by them are accidents resulting from the employment.

*Id.* at 99 (emphasis added).

Almost 30 years ago, the Tennessee Supreme Court noted Larson's treatment of "personal comfort activities" and concluded "[t]hese activities are generally found to be sufficiently related to employment to be in the course of employment." *Carter v. Volunteer Apparel, Inc.*, 833 S.W.2d 492, 495 (Tenn. 1992). In *Carter*, the employer argued that the employee was doing nothing to benefit the employer and that the break area where the employee was injured was being provided by the employer for the employee's own personal convenience. The Court thought it significant that the employer provided a break area for its employees and acquiesced in employee's taking pre-work breaks. Noting that the Workers' Compensation Act did not expressly require that an employee must have been benefitting the employer at the time of the injury, the Court said the Act "merely states that the injury must be one 'arising out of and in the course of employment.'" *Id.* at 496. We are mindful that the statute in question was amended by the 2013 Reform Act to provide that an "injury" means one "arising *primarily* out of and in the course *and scope* of employment." Tenn. Code Ann. § 50-6-102(14). Nonetheless, the statute does not require that an employee must have been benefitting an employer at the time of the injury.

An accidental injury arises out of the employment "when there is apparent to the rational mind, upon consideration of all the circumstances, a causal connection between the conditions under which the work is required to be performed and the resulting injury." *Phillips v. A&H Const. Co.*, 134 S.W.3d 145, 150 (Tenn. 2004). The phrase "causal connection" means "cause in the sense the accident had its origin in the hazards to which the employment exposed the employee while doing [the] work." *Id.* The determination of whether an injury arises out of a worker's employment is a question of fact. *Id.* at 149. As noted more than 40 years ago by the Tennessee Supreme Court, "[i]t is difficult, perhaps impossible, to compose a formula which will clearly define the line between accidents and injuries which arise out of and in the course of employment to those which do not; hence,

9

in determining whether an accident arose out of and in the course of the employment, each case must be decided with respect to its own attendant circumstances and not by resort to some formula." *Bell v. Kelso Oil Co.*, 597 S.W.2d 731, 734 (Tenn. 1980).

Here, Employee's testimony was unrefuted. In addition to testifying that he was reviewing his emails and calendar on his phone when he "used a vape and inhaled and wound up coughing to the point where [he] passed out," he testified his manager and he used the designated smoking area, dubbed "the third-floor meeting room," to have "private meetings out there away from the client." He said there were no tables, no "formal" seating area, and no chairs. He described the wall from which he fell as "a natural place to sit [and,] [i]n fact, it was the only [place to sit] as there [were] no chairs provided by [Employer] despite the regular use of this area for breaks." Furthermore, Employee testified that "[e]mployees, including [his] manager who was a smoker, routinely sat on the wall while using this area for a smoking break or for meetings." Against these unrefuted facts, we conclude the preponderance of the evidence supports the trial court's determination of a sufficient connection between Employee's injuries and his employment to establish he would likely prevail at a hearing on the merits.[1]

### *Whether the Trial Court Erred in Failing to Award Medical Benefits for Employee's Initial Treatment*

Employee contends the trial court erred in failing to order Employer to pay the medical bills the parties jointly submitted to the court prior to its decision on the record. The trial court acknowledged that the parties stipulated the medical bills to be "true, accurate and admissible in accordance with [applicable regulations] and the Tennessee Rules of Evidence." However, the trial court concluded the stipulation did not meet the requirements for the court to order Employer to pay the bills because there was no proof the bills were reasonable, necessary, or causally related to the work incident. Employee maintains the burden fell to Employer to prove that the bills were not reasonable or necessary, insisting that, because Employer declined to provide medical benefits, "[o]nce

---

[1] In our colleague's dissent, he finds the addition in the 2013 Reform Act of the term "primarily" to the "arising out of" component in Tennessee Code Annotated section 50-6-102(14)(B) to be "highly pertinent" to his analysis, noting his conclusion, expressed in a prior dissent, that this "tightened, not loosened, the causation component." We note that section 50-6-102(14)(B) provides that an injury "'arises primarily out of and in the course and scope of employment' *only* if . . . the employment contributed more than fifty percent (50%) in causing the injury, considering all causes." (Emphasis added.) Further, subsection 50-6-104(14)(C) provides that an injury "*causes* death, disablement or the need for medical treatment *only* if it has been shown to a *reasonable degree of medical certainty* that it contributed more than fifty percent (50%) . . . , considering all causes." (Emphases added.) Thus, these subsections appear to require medical proof to establish that an injury "arises primarily out of and in the course and scope of the employment, considering all causes." The Appeals Board has not previously addressed whether the "primarily" component in these subsections applies to non-medical causation issues, and this decision does not address that issue.

the trial court found the injury compensable, the burden shifted to Employer to prove that the bills submitted were not reasonable or necessary."

The flaw in Employee's argument rests in his assertion that the trial court found the injury to be compensable. It did not. Rather, the trial court determined Employee "is likely to prevail at a hearing on the merits that he suffered an injury arising primarily out of and in the course and scope of employment, which was not idiopathic in nature." We find no error in the trial court's refusal to order Employer to pay the bills in question in its decision on the record.

## Conclusion

For the foregoing reasons, we affirm the trial court's September 10, 2021 expedited hearing order and remand the case. Costs on appeal are taxed to Employer.

11



**TENNESSEE BUREAU OF WORKERS' COMPENSATION**
**WORKERS' COMPENSATION APPEALS BOARD**

| | | |
|---|---|---|
| James McGauvran | ) | Docket No.     2020-06-0558 |
| | ) | |
| v. | ) | State File No.  32368-2019 |
| | ) | |
| ATOS Syntel, Inc., et al. | ) | |
| | ) | |
| | ) | |
| Appeal from the Court of Workers' | ) | |
| Compensation Claims | ) | |
| Kenneth M. Switzer, Chief Judge | ) | |

---

**Opinion Concurring in Part and Dissenting in Part**

---

Conner, J., concurring in part and dissenting in part.

This case requires us to consider the outer limits of the phrase "arising primarily out of" employment. With respect to the issue of the trial court's declining to order Employer to pay certain medical bills, I concur with the majority opinion. However, as I did in my dissent in *Harris v. Nashville Center for Rehabilitation and Healing*, No. 2019-06-1008, 2021 TN Wrk. Comp. App. Bd. LEXIS 9 (Tenn. Workers' Comp. App. Bd. Jan. 28, 2021), I conclude Employee did not come forward with sufficient evidence to show he is likely to prevail at trial in proving his injury arose primarily out of his employment. I therefore dissent with respect to that portion of the majority opinion.

In *Harris*, I reviewed Tennessee precedent in which appellate courts addressed the "arising out of" component:

> [A]s recently as 2019, and on multiple occasions since 2007, Tennessee courts, including our Supreme Court, have reiterated what I believe to be the general rule in Tennessee: in order for an injury to arise primarily out of the employment, the employee must show a "danger or hazard peculiar to the work," or the injury must have been caused by a "risk inherent in the nature of the work."

*Id.* at * 22-23 (Conner, J. dissenting). Thus, in my view, at an interlocutory stage of the case, an employee must come forward with sufficient evidence to show he or she is likely to prevail at trial in proving that the injury was caused by a danger or hazard peculiar to

1

the work or a risk inherent in the nature of the work. *See* Tenn. Code Ann. § 50-6-239(d)(1). I conclude Employee has not met this burden at this stage of the case.

Both the trial court and my colleagues conclude this case falls squarely within the "personal comfort" doctrine. I conclude this case is beyond the reach of that doctrine based on the evidence presented to date. In *Jones v. Sonoco Products, Inc.*, No. 9, 1992 Tenn. LEXIS 144 (Tenn. Feb. 24, 1992), the Tennessee Supreme Court, in an unpublished opinion, considered whether the widow of an employee who died of asphyxiation due to chewing a piece of gum at work could recover death benefits.[1] In concluding the widow had not established that the employee's death arose out of his employment, the Court explained as follows:

> To be compensable, an injury must have some causal relationship to the employee's work. It is not within the workers' compensation law if the injury was only coincidental, or contemporaneous, or collateral to the employment. The mere presence at the place of injury because of employment will not result in the injury being considered as arising out of employment.

*Id.* at *6. The court then concluded:

> In the present case we find that no such relationship exists between the duties required by [the employee's] employment and his swallowing of the gum which resulted in his subsequent accidental death. In other words, *the chewing of the gum was not a risk incident to [the employee's] employment*. To hold otherwise would expose the employer to risks not intended by the broad scope of the Workers' Compensation Act.

*Id.* at *7-8 (emphasis added).

In *Connor v. Chester County Sportswear Co.*, No. W2001-02114-WC-R3-CV, 2002 Tenn. LEXIS 448 (Tenn. Workers' Comp. Panel Oct. 18, 2002), an employee sought workers' compensation benefits when she twisted her knee while standing from a toilet in the restroom at work. The trial court had awarded benefits, concluding that using the restroom at work was a "personal comfort" activity, which is "generally regarded as compensable." *Id.* at *3. On appeal, however, the Supreme Court's Special Workers' Compensation Appeals Panel reversed, explaining its rationale as follows:

> [W]e find that Claimant's injury did not "arise out of" her employment. Upon a consideration of all the circumstances, there was not a causal

---

[1] I acknowledge that, because it was designated as "not for publication," the *Jones* opinion is not controlling authority. However, I conclude the Court's rationale and holding in *Jones* is persuasive authority, *see* Tenn. Sup. Ct. R. 4(G), and is particularly apt to the analysis of this case.

connection between the conditions under which the work is required to be performed by [the employee] and the resulting injury. The mere presence of the employee at the place of injury because of the employment is not sufficient. Claimant could have twisted to pull up her pants and flush the commode at any restroom location. The injury has no rational connection to her work duties. *The injury did not result from a danger or hazard peculiar to the work or . . . a risk inherent in the nature of the work.*

*Id.* at *7-8 (emphasis added).[2] Thus, in my opinion, it is not enough that Employee show his vaping occurred in an area of the parking garage where employees regularly congregated. He must also show that his vaping has a "rational connection" to his work duties and that his accident and injuries were caused by a "danger or hazard peculiar to the work" or a "risk inherent in the nature of the work."

Moreover, I find it highly pertinent to this analysis that, for incidents occurring on or after July 1, 2014, an injured employee has the burden of proving that the work injury arose *primarily* out of the employment, meaning that "the employment contributed more than fifty percent (50%) in causing the injury, considering all causes." Tenn. Code Ann. § 50-6-102(14)(B) (2014). As I explained in my dissent in *Harris*, "because the Reform Act added the word 'primarily' to the 'arising out of' requirement, I conclude the Act tightened, not loosened, the causation component." *Harris*, 2021 TN Wrk. Comp. App. Bd. LEXIS 9, at *23 (Conner, J., dissenting). In addition, for injuries occurring after July 1, 2014, we are no longer to resolve any reasonable doubt as to causation in favor of the employee. *Id.* at *23-24 (Conner, J., dissenting).

In the present case, the evidence presented to date indicates Employee "used a [vaping device] and inhaled and wound up coughing to the point where [he] passed out." Just as the Supreme Court concluded in *Jones* with respect to the chewing of gum, I conclude the use of a vaping device was not a risk incident to the employment and had no rational connection to his work duties. Moreover, just as the Appeals Panel noted in *Connor*, I conclude Employee could have chosen to use a vaping device anywhere, and his mere presence at the place of employment is not enough to establish the requisite causal connection. Finally, according to Employee's own statements, he does not assert that his "multitasking" or his checking of emails on his phone caused or contributed to him passing out and falling. Instead, he admits it was his use of the vaping device that caused him to pass out and fall. In my opinion, the evidence presented to date indicates that Employee's accident and injuries were more than fifty percent caused by a non-work-related activity and, thus, did not arise *primarily* from any employment activity. I therefore respectfully dissent.

---

[2] The Appeals Panel's findings of fact and conclusions of law were "adopted and affirmed" by the Tennessee Supreme Court. *See Connor v. Chester Cty. Sportswear Co.*, No. W2002-02114-WC-R3-CV, 2002 Tenn. LEXIS 447 (Tenn. Oct. 18, 2002).



# TENNESSEE BUREAU OF WORKERS' COMPENSATION
# WORKERS' COMPENSATION APPEALS BOARD

| James McGauvran | ) | Docket No. 2020-06-0558 |
|---|---|---|
| | ) | |
| v. | ) | State File No. 32368-2019 |
| | ) | |
| ATOS Syntel, Inc., et al. | ) | |
| | ) | |
| | ) | |
| Appeal from the Court of Workers' | ) | |
| Compensation Claims | ) | |
| Kenneth M. Switzer, Chief Judge | ) | |

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the Appeals Board's decision in the referenced case was sent to the following recipients by the following methods of service on this the 3rd day of December, 2021.

| Name | Certified Mail | First Class Mail | Via Fax | Via Email | Sent to: |
|---|---|---|---|---|---|
| L. Blair Cannon | | | | X | l.blair.cannon@thehartford.com |
| James Higgins Stephanie Montenegro | | | | X | jsh@higginsfirm.com stephanie@higginsfirm.com |
| Kenneth M. Switzer, Chief Judge | | | | X | Via Electronic Mail |
| Penny Shrum, Clerk, Court of Workers' Compensation Claims | | | | X | penny.patterson-shrum@tn.gov |

Olivia Yearwood
Clerk, Workers' Compensation Appeals Board
220 French Landing Dr., Ste. 1-B
Nashville, TN 37243
Telephone: 615-253-1606
Electronic Mail: WCAppeals.Clerk@tn.gov